UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CITY OF HOUSTON TEXAS, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:14-CV-02213 |
| | § | |
| TOWERS WATSON & CO., | § | |
| | § | |
| Defendant. | § | |

## OPINION AND ORDER

Pending before the Court is Defendant Towers Watson & Co.'s ("Towers") motion to dismiss for failure to state a claim. Doc. 19. Having considered the motion, responses, replies, the facts in the record, and the applicable law, the Court concludes the motion should be denied.

## I.     Background

The Houston Firefighters' Relief and Retirement Fund (the "Fund") is a public retirement system funded by active firefighters and the City of Houston (the "City"). Tex. Rev. Stat. article 6243.2 (the "Statute") requires firefighters to contribute a fixed percentage of their salaries to the Fund. Doc. 1 ¶ 12. The City must contribute twice the amount funded by the firefighters plus any additional amount needed to cover (1) the cost of benefits and (2) the amortized portion of any unfunded liability for the current year. The Fund can increase its members' benefits only if:

(1) an actuary selected by the Fund determines that a proposed benefit increase cannot reasonably be viewed as posing a material risk of jeopardizing the Fund's ability to pay any existing benefit;
(2) a majority of the current and retired firefighters vote for the benefit increase;
(3) the increase does not deprive a member of a right to receive an existing benefit; and
(4) the Pension Review Board approves the determination of the actuary selected by the Fund.

Doc. 1 ¶ 16. Increases in benefits are first proposed by the Fund and then must be approved by the Texas Pension Review Board. The Fund is managed by a board of 10 trustees, who include the

City's Treasurer and a trustee appointed by the Mayor. The amount of the City's annual contribution to the Fund is determined by an actuary hired by the Fund. Doc. 1 ¶ 13-16.

From 1984 until 2003, Towers was responsible for preparing actuarial valuations of the Fund's assets and liabilities and calculating the City's required annual contributions. In February 2000, Towers reported the City's annual contribution for 2000 would be the statutory minimum, or twice the firefighters' payroll contribution, without any additional amount to cover the cost of benefits and amortized liabilities because the Fund had an existing surplus. Towers reported the City's annual contribution would remain at the statutory minimum through 2018. After Towers' February report, the Fund considered increasing the benefits for retirees and adding new benefits. In April 2000, Towers released a second report addressing the proposed benefit changes. Towers reported the proposed benefits would increase the City's contribution necessary for full funding from 13.7% to 15.2% of the firefighters' payroll. Since the benefit increases would not raise the City's annual contribution above the statutory minimum of 15.4% (twice the firefighters' contribution, which was fixed at 7.7% of payroll), Towers indicated the proposed benefit changes would not increase the City's contribution rate. In May 2000, the Pension Review Board held a hearing to discuss the proposed benefit changes and Towers' report. Minutes of the hearing indicate that the City "supported the benefit changes". The City alleges its support was based on Towers' representations in the February 2000 and April 2000 reports. Doc. 1 ¶ 18-24. The City alleges that its "support for the benefit changes was a substantial factor contributing to the enactment of the benefit changes." Doc. 33 at 1.

In March 2002, Towers issued an annual valuation report that indicated the City's normal cost of benefits had increased from 15.2% to 22.3%. This increase meant the City was responsible for contributing an additional $11.6 million that year. The same report indicated the increased contribution would persist through at least 2020. After the March 2002 report, Towers changed the

group of actuaries responsible for advising the Fund. In December 2002, Towers released another actuarial report that included several calculation changes to Towers' previous cost analysis. These calculation changes resulted in an increased accrued liability amount of $163 million, increasing the City's required contributions. Doc. 1 ¶ 25-27.

On August 1, 2014, the City filed this suit against Towers for negligent misrepresentation and professional malpractice. Doc. 1. The City alleges Towers' February 2000 and April 2000 reports "negligently miscalculated the cost of the Fund's existing benefits" and "misrepresented that the existing benefits could be increased and the new benefits could be added without increasing the City's contribution rate." Doc. 1 ¶ 22.

## II.    Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Factual matter is limited to "documents attached to or incorporated in the complaint and matters of which judicial notice may be taken." *U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 379 (5th Cir. 2003).

## III.    Discussion

The City asserts two Texas common law claims against Towers: (1) negligent misrepresentation and (2) professional malpractice. Doc. 1.

### A.    Negligent Misrepresentation

To state a claim for negligent misrepresentation, a plaintiff must allege:

(1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation.

*Federal Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991) (quoting Restatement (Second) of Torts § 552 (1977)). Towers seeks dismissal on the following grounds: (1) Towers' alleged statements are not actionable misrepresentations because they were predictions of future events, not statements of existing fact; and (2) City cannot establish reliance as a matter of law. Doc. 19 at 10, 16.

　　*1. Misrepresentation of Existing Fact*

　　"A claim for negligent misrepresentation under Texas law contemplates that the 'false information' provided by the defendant is a misstatement of existing fact." *Clardy Mfg. Co. v. Marine Midland Bus. Loans Inc.*, 88 F.3d 347, 357 (5th Cir. 1996). "Negligent misrepresentation does not occur when a defendant simply makes a guess as to a future, unknown event." *Id.* (quoting *Sergeant Oil & Gas Co. v. Nat'l Maintenance & Repair, Inc.*, 861 F. Supp. 1351, 1360 (S.D. Tex. 1994)).

　　The City alleges Towers "negligently misrepresented that its work accurately and fairly presented the actuarial position" of the Fund. The City lists 13 misrepresentations. Doc. 1 ¶ 32(a)-(m). Misrepresentations "c" through "m" are predictions of the City's future contribution rates and the future effects of the proposed benefit changes. Doc. 1 ¶ 32. These are statements as to future events, not existing fact. The City also alleges Towers misrepresented that the Fund was "100% funded," "had a surplus of $67 million," and the City's required contribution for normal cost was 13.7% of payroll for the year 1999. Doc 1. ¶ 20, 32.  Towers fails to cite any authority that precludes actuarial statements regarding surplus value and current contribution rates simply because actuarial methods were used in the calculation.

　　The City alleges Towers misrepresented that its work met generally accepted actuarial standards in three instances: (1) Towers arbitrarily selected cost assumptions for the "DROP" benefits and ascribed no cost to the "BackDROP" benefits in its analysis of the proposed benefits; (2) Towers "fail[ed] to assess and explain the short and long-range cost and retirement and other

behavioral impacts of proposed benefits"; and (3) Towers failed to follow actuarial standards in communicating "the projected cost of existing and proposed benefits." Doc. 1 ¶ 27, 38. The City alleges Towers' reports did not include a warning of the possibility that its actuarial valuations may be inaccurate or "pose a material risk of jeopardizing the Fund's ability to pay any existing benefit." Doc. 27 at 9. The City cites one case in which a district court found the defendant's statement that its work was in conformity with generally accepted accounting principles was an actionable misrepresentation, but the case was dismissed because the defendant did not meet the reliance element. *See SC & E Admin. Serv., Inc. v. Deloitte*, No. A-05-CA-929-SS, 2006 WL 6747974 at *14 (W.D. Tex. July 25, 2006). Towers fails to cite authority discussing how such allegations fail to meet the elements of negligent misrepresentation under *Federal Land Bank*.

  *2. Reliance*

  The City alleges it supported the proposed benefit changes in reliance on Towers' actuarial statements and representation that its work was in line with generally accepted actuarial standards. It is plausible that if not for Towers' actuarial statements and representation that its work was in line with generally accepted actuarial standards, the City would not have supported the benefit changes.

  Towers argues the City's support for the benefit changes cannot constitute reliance because the City only supported the changes indirectly through its representatives on the Board. Doc. 19 at 10. Towers argues the City's representatives only represented the Fund, not the City. *Id.* at 12. In *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 500-01 (5th Cir. 2007), stock option holders sued a bank advising their company on a proposed merger for negligently misrepresenting facts on which the company's board relied in effecting the merger. The option holders argued that they relied indirectly through one board member who was an option holder, but the Court held there was no reliance because "they were not authorized to act" and "played no role in the merger proceedings." *Id.* at 502. The Court noted, "the option-holder plaintiffs never were able to distinguish between

Nelson's and other Board members' actions *as members of the Board* and their actions *as option holders*." *Collins*, 224 F.3d at 501 n.9 (emphasis in original).  Here, the City alleges the City representatives were called upon to relay information to the City and were "routinely excluded from Fund Board meetings" when the Fund intended to keep information private from the City, suggesting they were representing both the City and the Fund.  Doc. 33 at 2.

Towers argues that the City is judicially estopped from alleging reliance. Doc. 19 at 13.  In a prior case against the Fund the City alleged the current "system of pension funding leaves [the City] completely out of the decision-making process." *Id.* at 15; *City of Hous. v. Hous. Firefighters' Relief and Retir. Fund*, No. 2014-02548 (190th Dist. Ct., Harris County, Tex. May 7, 2014). To assert judicial estoppel: (1) the party's position must be clearly inconsistent with its previous one, and (2) the previous court must have accepted the party's earlier position. *Hopkins v. Cornerstone America*, 545 F.3d 338, 347 (5th Cir. 2008).  The purpose of judicial estoppel is to reduce the "risk of inconsistent court determinations." *Id.* (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001)). "Absent success in a prior proceeding, a party's later inconsistent position introduces no 'risk of inconsistent court determinations.'" *New Hampshire*, 532 U.S. at 750-51 (quoting *United States v. C.I.T. Constr. Inc.*, 944 F.2d 253, 259 (5th Cir. 1991)). Here, the City's complaint was dismissed on summary judgment, and there is no risk of inconsistent court determinations. *City of Hous.*, No. 2014-02548.

### B.      Professional Malpractice

"To establish liability for professional negligence, the plaintiff must show the existence of a duty, a breach of that duty, and damages arising from the breach." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 314 (5th Cir. 2002). "A professional negligence claim requires privity of contract." *Ervin v. Mann Frankfort Stein & Lipp CPAs, LLP*, 234 S.W.3d 172, 182 (Tex. App.—San Antonio 2007, no pet.); *see McCamish v. F.E. Appling Interests*, 991 S.W.2d 787, 792 (Tex. 1999) ("The general rule is that persons who are not in privity with the attorney cannot sue the

attorney for legal malpractice."). Contractual privity can be expressed or implied. *Ervin*, 234 S.W.3d at 182. "An implied contract exists when the facts and circumstances show a mutual intention to contract." *Id.* at 182-83.

Here, the City has not alleged it signed a contract with Towers. The City, however, alleges "[t]he Statue places the City in privity with Towers, regardless of whether a contract was executed between the City and Towers." Doc. 27 at 19. Arguably, an implied contract exists based on the "facts and circumstances" of the City's representation on the Fund Board. *Ervin*, 234 S.W.3d at 182-83.

## IV.  Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that Defendant's Motion to Dismiss (Doc. 19) is **DENIED**.

SIGNED at Houston, Texas, this 23rd day of September, 2015.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE